IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MOLTON MAYBERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:10-CV-479-WKW |
| ) | [WO] |
| PATRICK R. DONAHOE, ) | |
| POSTMASTER GENERAL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Molton Mayberry brings this Title VII race discrimination lawsuit against Defendant Patrick R. Donahoe, the Postmaster General. Mr. Mayberry claims racial discrimination was the reason he was not selected when he applied for a job as Postmaster in Prattville, Alabama. The case is before the court on Defendant's motion for summary judgment (Doc. # 22). Mr. Mayberry has filed a response in opposition (Doc. # 27), to which Defendant has replied (Doc. # 30). All motions have been fully briefed and are ready for adjudication. Upon consideration of the parties' briefs, the relevant law, and the record as a whole, the court finds that Defendant's motion for summary judgment is due to be granted.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or that venue is proper, and the court finds that there are allegations sufficient to support both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Area IV of Alabama, a designation used by the United States Postal Service, is a geographical zone that includes approximately 126 post offices. Post offices at the EAS-21 level, like the one in Prattville, Alabama, are among the largest in Area IV, and they have a huge impact on the Area's overall budget and performance.

Plaintiff Molton Mayberry has been an employee of the United States Postal Service since 1984. Over the course of his career, Mr. Mayberry has occupied several positions with the Postal Service, including nearly two years acting as Postmaster at level EAS-20 posts.

After the acting Postmaster in Prattville retired in 2007, Defendant issued an internal vacancy announcement for the position. Mr. Mayberry applied, and a review committee sent his name, along with two others, to Richard Aitken, Manager of Post Office Operations. Mr. Aitken was then to determine which applicant would get the job.

After interviewing all three applicants, Mr. Aitken claims he eliminated Mr. Mayberry from consideration because "[Mr. Mayberry] was simply too inexperienced as a Postmaster compared to the other two highly experienced applicants, and nothing [Mr. Mayberry] said at his interview changed this conclusion." (Def.'s Summ. J. Br. 6 (Doc. # 23).) Further influencing his opinion, Mr. Aitken claims Mr. Mayberry had "cost[ ] the Postal Service thousands of dollars by mishandling union grievances during his brief stint as acting Postmaster at the Auburn post office." (Def.'s Summ. J. Br. 6.) After eliminating Mr. Mayberry, Mr. Aitken had a chart made to compare the applicants' performance using data culled from Flash Reports (an achievement/productivity metric used to compare post offices) and the National Performance Assessment (which includes Flash data). Although he primarily used the chart to compare the two remaining applicants, Mr. Aitken claims to recall "observ[ing] Mr. Mayberry's FY 2007 numbers on the chart were last in most categories and last overall." (Def.'s Summ. J. Br. 7.)

After a month of deliberation, Mr. Aitken selected the successful applicant, a white male. On November 27, 2007, Mr. Mayberry and the other applicant were sent form rejection letters. The following January, Mr. Mayberry filed an informal complaint with an Equal Employment Opportunity Counselor, claiming racial discrimination was the reason he was not selected for the Prattville Postmaster

position. After an unsuccessful mediation, Mr. Mayberry filed a formal complaint with the Postal Service Equal Employment Opportunity office.[1] On February 11, 2010, Mr. Mayberry lost his case before an Administrative Law Judge, and on May 28, 2010, Mr. Mayberry filed suit in this court.

### III.  STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. "[T]he court must view all evidence and make all reasonable inferences in favor of the party

---

[1] In addition to the non-selection claim that is now before the court, Mr. Mayberry also included a challenge to the denial of a lateral transfer request for the Prattville Postmaster position. As Defendant points out, the administrative complaint regarding the lateral transfer was denied as untimely by the EEO office. In his brief, Defendant argues Mr. Mayberry "cannot challenge [the lateral transfer] decision in this lawsuit." (Def.'s Summ. J. Br. 12). As Defendant notes, that claim was not asserted in the Complaint (Doc. # 1), nor has Mr. Mayberry defended it on summary judgment. As a result, no claims regarding the lateral transfer request denial are at issue here.

opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Rule 56(e)(2). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

## IV. DISCUSSION

Title VII prohibits employment discrimination on the basis of race. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). A disparate treatment claim under Title VII arises "where an employer has 'treated [a] particular person less favorably than others because of' a protected trait." *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–86 (1988)). A disparate treatment claim requires proof of discriminatory intent, which can be established with direct evidence, or through circumstantial evidence by using the burden shifting framework from *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Crawford v. Carroll*, 529 F.3d 961, 975–76 (11th Cir. 2008). This is not a direct evidence case, and the *McDonnell Douglas* framework applies.[2]

First, under *McDonnell Douglas*, a plaintiff must create an inference of discrimination by establishing a *prima facie* case. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002). The burden to establish a *prima facie* case is not intended to be "onerous," but requires only that the plaintiff establish adequate facts to permit an inference of discrimination. *Holifield v. Reno*, 115 F.3d 1555, 1558 (11th Cir. 1997) (citations omitted). Next, should the plaintiff establish a *prima facie* case, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for the employment action. *Id.* at 1564. Once the defendant has presented a legitimate, nondiscriminatory reason for its action, the burden shifts back to the plaintiff to

---

[2] Although the theory is not clearly developed in Mr. Mayberry's brief, he references the possibility of using statistical evidence to prove discriminatory intent. (Pl.'s Summ. J. Resp. 4 (citing *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).) The only portion of Mr. Mayberry's brief that might support such an argument is a reference to a deposition indicating Mr. Aitken "[could not] name a single African-American of a [*sic*] EAS Level 21 that he has promoted." (Pl.'s Summ. J. Resp. 10.) Mr. Mayberry has made no effort, however, to demonstrate how many such vacancies Mr. Aitken was tasked to fill during his tenure as Manager of Post Office Operations, or how many black applicants were considered for those positions. As the Eleventh Circuit has noted, "to say that very few blacks have been selected by [Mr. Aitken] does not say a great deal about [Mr. Aitken's] practices unless we know how many blacks have applied and failed compared to the success rate of equally qualified white applicants." *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir. 1991). Therefore, any attempt by Mr. Mayberry at using statistical evidence to prove discriminatory intent is unsupported by the evidence and must fail.

produce "sufficient evidence to find that the employer's asserted justification is false" and in reality, a pretext for unlawful intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). In other words, at the summary judgment stage, the plaintiff may survive by providing a *prima facie* case and evidence sufficient for a jury to find that the employer's proffered explanation is false. *Id.* at 147–48.

### A. Mr. Mayberry has established a *prima facie* case.

Mr. Mayberry has established a *prima facie* case if he can show: (1) he is a member of a protected class; (2) he applied for and was qualified for a position; (3) he was rejected; and (4) Defendant filled the position with someone outside his protected class. *See Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274–75 (11th Cir. 2002). Mr. Mayberry has met this burden by presenting evidence that, as an African-American, he is a member of a protected class; he was qualified for and did apply for the Postmaster position in Prattville; he did not get the job; and the position was filled by the successful applicant (who was white).

### B. Defendant has offered legitimate, nondiscriminatory reasons for his actions.

Because Mr. Mayberry has established a *prima facie* case, Defendant must respond with evidence of a legitimate, nondiscriminatory reason for his decision to hire the successful applicant over Mr. Mayberry. To that end, Defendant has provided

7

evidence that the successful applicant had 18 years of Postmaster experience (Aitken Decl. ¶¶ 6, 10, 13-014, Ex. I) compared to Mr. Mayberry's 5 years in that position (Aitken Decl. ¶¶ 6, 10, Ex. D).  Defendant has also submitted evidence that the successful applicant had a history of successfully dealing with union problems, while Mr. Mayberry had cost the Postal Service thousands of dollars by mishandling union grievances.  (Aitken Decl. ¶¶ 10, 14, Ex. I.)  Finally, Defendant has offered performance data from Flash Reports and the National Performance Assessment that shows the successful applicant significantly outperformed Mr. Mayberry over the considered time period.  (Aitken Decl. ¶¶ 11, 12, 15, Ex. H.)  To meet the burden imposed by the *McDonnell Douglas* framework, Defendant is only required to show *a* legitimate, nondiscriminatory reason for the challenged action.  Defendant has provided three:  Mr. Mayberry's relative lack of experience, his history of mishandling union grievances, and his relatively poor performance compared to the successful applicant.

C.  **Mr. Mayberry's evidence does not show Defendant's reasons are pretextual.**

Because Defendant has offered legitimate, nondiscriminatory reasons for his actions, Mr. Mayberry's case cannot survive unless he can produce sufficient evidence that Defendant's reasons are merely pretexts for discrimination. *See Reeves*, *Inc.*, 530 U.S. at 148.  In doing so, Mr. Mayberry "must meet [those] reason[s] head on and

rebut [them], and [he] cannot succeed by simply quarreling with the wisdom of th[ose] reason[s]." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

In response to Defendant's reliance on years of experience as a factor to justify his decision, Mr. Mayberry argues that "[t]he overwhelming evidence in this case is that years of experience was not a criteria [*sic*] for the decision as set forth in the job announcement." (Pl.'s Summ. J. Resp. 8.) Strong adjectives cannot substitute for weak evidence, however, and Mr. Mayberry has provided no evidence – overwhelming or otherwise – tending to show Defendant's decision to hire an applicant with over a decade more postmaster experience than Mr. Mayberry was a pretext for racial discrimination.

Next, although he does not seem to dispute the accuracy of the data Mr. Aitken relied upon to inform his decision, Mr. Mayberry argues that data formed an "improper basis" for the selection decision. (Pl.'s Summ. J. Resp. 2.) Mr. Mayberry also claims Mr. Aitken considered data from fiscal year 2006 when data from fiscal year 2007 should have been used instead. Even assuming these criticisms are valid, the court's task is not to consider the wisdom of Defendant's hiring criteria. *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (noting Title VII allows an employer to take action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a

9

discriminatory reason"). What matters here is whether Mr. Mayberry can demonstrate Defendant's reliance on the performance data was a pretext for racial discrimination. That he has not done.

Finally, Plaintiff has made no specific argument why Defendant's reliance on Plaintiff's comparatively poor track record in dealing with unions is a pretext for discrimination. Plaintiff is required to meet head on each of the reasons Defendant offers for the employment action – including Defendant's reliance on Mr. Mayberry's history of "mishandling union grievances" (Def.'s Summ. J. Br. 6) compared to the successful applicant's "ability to work well with unions with few grievances or conflicts" (Def.'s Summ. J. Reply 5). Mr. Mayberry has failed to do so, however, and any one of Defendant's legitimate, nondiscriminatory reasons would, standing on its own, render summary judgment appropriate.

In an attempt to turn the strength of Defendant's case into a weakness, Mr. Mayberry also argues that Defendant's reliance upon multiple reasons to justify its actions is, in itself, evidence of discriminatory intent. To that end, Mr. Mayberry cites a decision of this court for the proposition that "pretext can be shown by producing evidence of an employer's inconsistent statement." *Emanuel v. George C. Wallace Cmty. Coll.,* No. 2:07-CV-819-WKW, 2008 WL 4767727, at \*6 (M.D. Al. Oct. 7, 2008). The remainder of the paragraph Mr. Mayberry cites, however, goes on to note

10

"'the existence of a possible additional non-discriminatory basis for [an adverse employment action] does not . . . prove pretext'" and that multiple reasons for an employer's actions must be "'fundamentally inconsistent in order to constitute evidence of pretext.'" *Id.* (quoting *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998) and *Phillips v. Aaron Rents, Inc.*, 262 F. App'x 202, 210 (11th Cir. 2008) (per curiam)). Here, Defendant has offered multiple, nondiscriminatory reasons for his decision not to hire Mr. Mayberry as Prattville Postmaster, and those reasons are not so fundamentally inconsistent as to constitute evidence of pretext.[3]

## V.  CONCLUSION

Based on the foregoing, it is ORDERED that Defendant's motion for summary judgment (Doc. # 22) is GRANTED.

DONE this 11th day of September, 2012.

/s/ W. Keith Watkins<br>
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Mr. Mayberry has also accused Defendant of "severe and substantial improprieties and regularities [*sic*] with regard to the selection process" for Prattville Postmaster (Pl.'s Summ. J. Resp. 10), along with an allegation that Defendant's reasons for his decision are "absurdly subjective" (Pl.'s Summ. J. Resp. 7). Mr. Mayberry has provided no hint of what improprieties and irregularities he is referring to, nor has he cited any authority for the proposition that the criteria Defendant used (*e.g.*, years of experience) should to be considered subjective, rather than objective, criteria for an employment decision. Accordingly, these arguments are just the sort of "mere conclusions and unsupported factual allegations [that] are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).